UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CRC INVESTMENTS LLC, | ) | Case No.  21-80172 |
| | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION FOR INTERIM AND FINAL ORDERS
GRANTING AUTHORITY TO USE CASH COLLATERAL**

NOW COMES CRC Investments, LLC (the "Debtor") and moves the Court pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on May 6, 2021 and continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtor is a North Carolina limited liability corporation that presently conducts business operations running a hospitality business with lodging and event venue at CRC Investments, LLC located at 85 Pine Crest Lane, Tryon, North Carolina 28782.

4. The Debtor owes income taxes to the Internal Revenue Service ("IRS") which is now a secured lien by the IRS.

5. Under 26 U.S.C. §6321, the Internal Revenue Service has an inchoate lien against all property of the Debtor which includes cash collateral.

6. Further, in connection with its business operations, the Debtor obtained an EIDL (Economic Injury Disaster Loan)  from U.S. Small Business Administration ("SBA") secured by certain property of the Debtor, summarized as follows:

  a. Security Agreement securing the Indebtedness by a lien upon the Debtor's personal property and fixtures, but not limited to accounts, inventory, equipment, instruments, including promissory notes, chattel paper, including tangible chattel paper and electronic chattel paper, documents, letter of credit rights, accounts, including health-care insurance receivables and credit card receivables, deposit accounts, commercial tort claims, general intangibles, including payment intangibles and software, and as –extracted collateral as such terms may from the time to time be defined in the Uniform Commercial Code (the "Collateral").

7. The IRS asserts a first priority security interest in the cash collateral of the Debtor.

8. SBA asserts a security interest in the Collateral, the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code.

9. With respect to the secured claim held by the IRS:

  a. The amount outstanding as of the Petition Date is approximately $509,757.51.

  b. The Debtor believes the fixtures to be worth approximately $448,410.00, the bank account balance of approximately $8,669.56, and vehicles and equipment have a value of approximately $15,000.00.

10. With respect to the secured claim held by SBA:

  a. The amount outstanding as of the Petition Date is approximately $126,500.00

  b. The Debtor believes the fixtures to be worth approximately $448,410.00, the bank account balance of approximately $8,669.56, and vehicles and equipment have a value of approximately $15,000.00.

11. The claims held by the IRS and SBA (collectively, the "secured parties") have not been scheduled as disputed, unliquidated, or contingent, and the Debtor believes that the liens and security interest described above are valid, property perfected and not subject to avoidance. The Debtor reserves for itself, any official committee of unsecured creditors subsequently created (the "Committee"), and any trustee subsequently appointed

in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

12. The Debtor is dependent upon the use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all its tangible assets, and thus has a need for the use of Cash Collateral. If not permitted to use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To the end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

13. An order substantially in the form attached hereto as Exhibit A (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of the secured parties as (i) the secured parties would continue to maintain existing liens on all existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of the secured parties and all other creditors.

14. The Debtor offers to provide the secured parties with adequate protection for the use of its Cash Collateral by:

> a. Limiting the use of Cash Collateral as generally projected in the proposed budget attached hereto (the "Budget") and as set forth in the proposed Interim Order, or as may otherwise be approved by the Court after further notice and hearing.
>
> b. Providing to the secured parties, the Bankruptcy Administrator, and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) actual reports on a monthly basis by the 21st day of the following month, with the first such report

due June 21, 2021, and (iii) such other financial reports as may be reasonably requested from the Debtor by such parties.

15. The Debtor seeks authority to use Cash Collateral through and including (i) the effective date of a confirmed plan of reorganization, (ii) a sale of substantially all of the assets of the estate, or (iii) the conversion of the case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtor may not use Cash Collateral for any purpose other than (i) operations in the ordinary course of business, (ii) monthly payments on executory contracts or leases, or (iii) payment of allowed administrative fees, costs, or expenses.

16. The Debtor proposes that in the event the secured parties has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said creditor may upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee (or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), and (iv) the Bankruptcy Administrator and opportunity to cure, on an expedited basis:

    a. Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or

    b. Seek an order terminating further authority to use Cash Collateral altogether.

17. While the Debtor seeks the consent of the secured parties to the use of Cash Collateral on an interim basis and for the purposes set forth in this Motion, in the absence of such consent the Debtor asks the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of Cash Collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

WHEREFORE, the Debtor prays the Court for the following relief:

1. Enter an Interim Order in the form attached hereto as <u>Exhibit A</u>, after notice and hearing (i) authorizing the Debtor to use Cash Collateral in an amount to be determined

at the interim hearing based upon the Budget attached hereto, and (ii) providing the secured parties with adequate protection as set forth herein.

2. Schedule a further hearing to be held regarding this motion, the Interim Order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. Such other relief as the Court may deem necessary and proper.

This the 6th day of May, 2021.

>*/s/ Joshua H. Bennett*
>Joshua H. Bennett, NCSB #32576
>Attorney for Debtor
>BENNETT GUTHRIE PLLC
>1560 Westbrook Plaza Dr.
>Winston-Salem, NC  27103
>Telephone:  (336) 765-3121

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION FOR INTERIM AND FINAL ORDERS GRANTING AUTHORITY TO USE CASH COLLATERAL has been served on all the creditors and interested parties in this case.

William P. Miller, Electronically
Bankruptcy Administrator

US Attorney's Office – MDNC
Nathan.Strup@us.doj.gov

US Attorney's Office – MDNC
Civil Division
Fax: (336) 333-5257

Alliance Laundry Systems, LLC
PO Box 775840
Chicago, IL 60677

Alliance Laundry Systems, LLC
PO Box 9900
Ripon, WI 54971

American Express
PO Box 1270
Newark, NJ 07101-1270

Benjamin K. Ridings
413 W. Finger St.
Landrum, SC 29356

Capital One
Bankruptcy Claims
PO Box 81083
Charlotte, NC 28272

Carl R. Caudle Jr.
PO Box 1322
Flat Rock, NC 28731

Carl Ray and Sharon Caudle, Sr.
PO Box 3150
Pawleys Island, SC 29585-3150

Chelsea N. Scruggs
PO Box 35
Zirconia, NC 28790

Citibank, N.A.
5800 S. Corporate Place
Sioux Falls, SD 57108

Credit Bureau
PO Box 26140
Greensboro, NC 27402

Employment Security Commission
PO Box 26504
Raleigh, NC 27611

Internal Revenue Service
Centralized Insolvency
PO Box 7346
Philadelphia, PA 19101-7346

Jennifer F. Blackwell
305 Rubin Wilson Rd.
Mill Spring, NC 28756

Linda J. Darling
201 E. Howard St.
Tryon, NC 28782

Lora T. Baker
Substitute Trustee
Feagan Law Firm, PLLC
60 Walker St., Ste. F
Columbus, NC 28722

Michael T. Wolfe
111 East Main St.
Inman, SC 29349

Monica E. Jones
60 Woodland Rd.
Tryon, NC 28782

NC Department of Revenue
PO Box 1168
Raleigh, NC 27640

Polk County Tax Collector
PO Box 308
Columbus, NC 28722

Portfolio Holdings IV-NC, LLC
Attn: Officer or Managing Agent
780 Smith Dairy Rd.
Columbus, NC 28722

Rory A. Powell
280 Pine Crest Lane
Tryon, NC 28782

Sam's Club
PO Box 530981
Atlanta, GA 30358

Small Business Administration
14925 Kingsport Rd.
Fort Worth, TX 76155

Susan Satterfield
101 Glenwalden Ln.
Tryon, NC 28782

Teri M. Clayton
218 N. Laurel Ave.
Landrum, SC 29356

Town of Tryon
301 N. Trade St.
Tryon, NC 28782

US Attorney General
US Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530-0014

US Attorney's Office – MDNC
Attn: Civil Process Clerk
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401

US Small Business Administration
409 3rd St., SW
Washington, DC 20416

US Small Business Administration
2 North Street, Ste. 320
Birmingham, AL 35203

Elizabeth Repetti
Bell Davis & Pitt
P.O. Box 21029
Winston-Salem, NC  27120-1029

TD Bank Hendersonville
535 Greenville Highway
Henderson, NC  28792

TD Bank
936 S. Trade St.
Tryon, NC  28782

TD Bank, N.A.
Attention:  Officer/Managing Agent
2035 Limestone Rd.
Wilmington, DE  19808

This the 6th day of May, 2021.

                                                */s/ Joshua H. Bennett*
                                                Joshua H. Bennett, NCSB #32576
                                                Attorney for Debtor
                                                BENNETT GUTHRIE PLLC
                                                1560 Westbrook Plaza Dr.
                                                Winston-Salem, NC  27103
                                                Telephone:  (336) 765-3121

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CRC INVESTMENTS LLC, | ) | Case No.  21-80172 |
| | ) | Chapter 11 |
| Debtor. | ) | |

**INTERIM ORDER GRANTING AUTHORITY TO USE CASH COLLATERAL**

This matter came before the Court after due notice for hearing on_____, 2020 to consider the Motion for Interim and Final Orders Granting Authority to Use Cash Collateral (Doc. ___, the "Motion") filed by CRC Investments, LLC (the "Debtor") pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure. The Debtor has complied with all applicable service requirements, and the Motion is properly before the Court for hearing.

After due consideration of the matters set forth in the Motion, the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that use of cash collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy

estate and all creditors, and should be approved on an interim basis, and for good and sufficient reasons appearing the Court makes the following findings, conclusions and orders:

1. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The Debtor is a North Carolina limited liability corporation that presently conducts business operations running a hospitality business with lodging and event venue space at CRC Investments, LLC located at 85 Pine Crest Lane, Tryon, North Carolina 28782.

4. The Debtor owes income taxes to the Internal Revenue Service ("IRS") which is now a secured lien by the IRS.

5. Under 26 U.S.C. §6321, the Internal Revenue Service has an inchoate lien against all property of the Debtor which includes cash collateral.

6. Further, in connection with its business operations, the Debtor obtained an EIDL (Economic Injury Disaster Loan) from U.S. Small Business Administration ("SBA") secured by certain property of the Debtor, summarized as follows:

> a. Security Agreement securing the Indebtedness by a lien upon the Debtor's personal property and fixtures, but not limited to accounts, inventory, equipment, instruments, including promissory notes, chattel paper, including tangible chattel paper and electronic chattel paper, documents, letter of credit rights, accounts, including health-care insurance receivables and credit card receivables, deposit accounts, commercial tort claims, general intangibles, including payment intangibles and software, and as –extracted collateral as such terms may from the time to time be defined in the Uniform Commercial Code (the "<u>Collateral</u>").

7. The IRS asserts a first priority security interest in the cash collateral of the Debtor.

8. SBA asserts a security interest in the Collateral, the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code.

9. With respect to the secured claim held by the IRS:

   a. The amount outstanding as of the Petition Date is approximately $509,757.51.

   b. The Debtor believes the fixtures to be worth approximately $448,410.00, the bank account balance of approximately $8,669.56, and vehicles and equipment have a value of approximately $15,000.00.

10. With respect to the secured claim held by SBA:

    a. The amount outstanding as of the Petition Date is approximately $126,500.00

    b. The Debtor believes the fixtures to be worth approximately $448,410.00, the bank account balance of approximately $8,669.56, and vehicles and equipment have a value of approximately $15,000.00.

11. The claims held by the IRS and SBA (collectively, the "secured parties") have not been scheduled as disputed, unliquidated, or contingent, and the Debtor believes that the liens and security interest described above are valid, property perfected and not subject to avoidance. The Debtor reserves for itself, any official committee of unsecured creditors subsequently created (the "Committee"), and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

12. The Debtor is dependent upon the use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all its tangible assets, and thus has a need for the use of Cash Collateral. The Debtor will be receiving deposits as rents become due at the first of the October. If not permitted to

use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To the end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

13. An order (the "<u>Interim Order</u>") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of the IRS as (i) the IRS would continue to maintain existing liens on all existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of Keystone and all other creditors.

Based upon the foregoing, the Court concludes that interim use of Cash Collateral is necessary and that an Order granting interim relief, followed by a further or final hearing upon due notice, would not prejudice the rights of the secured parties, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1. Subject to the terms and conditions contained in this Order, the Debtor may use Cash Collateral in accordance with Section 363 on an interim basis and for the period through and including____, 2020, in the amounts and for the purposes set forth in the interim budget for such period attached hereto (the "<u>Budget</u>"), not to exceed 110% on a line-item cumulative basis, pending further orders of the Court after notice and hearing.

2. The Debtor has agreed to provide the secured parties with adequate protection for the use of its Cash Collateral by:

a. Limiting the use of Cash Collateral as generally projected in the Budget and as set forth in the Interim Order, or as may otherwise be approved by the Court after further notice and hearing.

b. Providing to the secured parties, the Bankruptcy Administrator and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) budget to actual reports on a monthly basis by the 21st day of the following month, with the first such report due by June 21, 2021, and (iii) such other financial reports as may be reasonably requested from

the Debtor by such parties.

3. Notwithstanding any suspension or termination of the right to use Cash Collateral (a "Termination Date"), the Debtor shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the costs of operating and preserving the estate, including allowed administrative fees, costs, or expenses, to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate amounts set forth in the Budget through such Termination Date.

4. In the event the secured parties has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said creditor may, upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee, or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules, and (iv) the Bankruptcy Administrator, and opportunity to cure, on an expedited basis:

a. Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or

b. Seek an Order terminating further authority to use Cash Collateral altogether.

5. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of the secured parties in its Cash Collateral. Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

6. This Order shall remain in full force and effect until the earlier of (a)

entry of an Order by the Court modifying the terms of this Order, or (b) entry of an Order by the Court terminating the right to use Cash Collateral.

7. Nothing contained herein shall be deemed a waiver by the secured parties from seeking further or additional adequate protection of its collateral, asserting objections to the Debtor's further use of Cash Collateral, or pursuing any other rights or remedies available to it under law or equity.

8. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

9. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided however, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

10. A further hearing (which may be a final hearing) on the Motion will be held at _____o'clock a.m. (Eastern) on _____, at which time the Court will further consider the Motion for Authority To Use Cash Collateral.

11. Counsel for the Debtor shall serve a copy of this Order upon all parties in interest and shall file a certificate of such service with the Clerk.

END OF DOCUMENT

CRC INVESTMENTS LLC (21-80172) Cash Collateral Budget
## May-2021

| | Amount | |
|---|---:|---:|
| Lodging | $ 26,500.00 | |
| Restaurant | $ 850.00 | |
| Gift Shop | $ 500.00 | |
| Total Revenue | | $ 27,850.00 |
| | | |
| Payroll & Payroll Taxes | ($14,000.00) | |
| Intuit QuickBooks Software | ($64.00) | |
| Bookkeeping (JM Laser) | ($517.00) | |
| Office Expense | ($78.00) | |
| Insurance (WC & Property) | ($1,250.00) | |
| Food & Beverage | ($800.00) | |
| Water, Sewer, Garbage | ($425.00) | |
| Electricity | ($2,100.00) | |
| Natural Gas | ($850.00) | |
| Telephone | ($830.00) | |
| Internet Access | ($76.00) | |
| Cable TV | ($418.00) | |
| Alliance Laundry | ($328.00) | |
| OTA Commissions | ($550.00) | |
| PMS (Think & Whistle) | ($347.00) | |
| Keyhole website marketing | ($500.00) | |
| Website hosting (Siteground) | ($40.00) | |
| Select Registry Dues | ($486.00) | |
| Merchant Processing Fees | ($562.00) | |
| Utility Deposits | ($5,116.74) | |
| Total Costs | | ($29,337.74) |
| Net Total | | ($1,487.74) |